IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| ELMER MELESIO | ) Case No. 5:11-cr-00048 (TBR) |
| | ) |
| | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Elmer Melesio's *pro se* Motion for Compassionate Release, (Mot. for Release), Dkt 108. The Government has responded, (Resp.), Dkt. 111. For the reasons stated herein, Melesio's Mot. for Release, Dkt. 108, is **DENIED**.

I.     **FACTUAL BACKGROUND**

In 2010, the Drug Enforcement Agency (DEA) began to investigate a methamphetamine distribution conspiracy in western Kentucky. *See* Presentence Investigation Report, (PSR), Dkt. 70, ¶ 11. The investigation showed that a Hispanic male from the Chicago area, known as "Pescado" and "Uncle," was the source of the methamphetamine. *See id.* ¶¶ 12–13. That Hispanic male, later identified as Melesio, used two couriers to make frequent methamphetamine shipments from Chicago to western Kentucky. *See id.* ¶¶ 13–14. In August 2011, undercover DEA agents began to communicate with Melesio through text messages and arranged to take delivery of $5,000 worth of methamphetamine. *See id.* ¶¶ 15–16. Melesio and one of his drivers were going to personally deliver the drugs. *See id.* ¶¶ 16–17.

On October 28, 2011, Melesio arrived in Paducah, Kentucky. *See id.* ¶ 18. He was accompanied by his driver, Jose Perez. *See id.* The undercover officers met Melesio and Perez

1

in a restaurant, and Melesio identified himself as "Uncle." *See id.* ¶ 20. In a transaction that the officer covertly audio- and video-recorded, the undercover officers bought the methamphetamine for $5,000. *See id.* ¶¶ 20–21. As the officers watched, Melesio and Perez removed eight plastic packages from under the hood of Perez's car and gave it to the officers in exchange for cash. *See id.* After the sale, Melesio and Perez drove away but they were later stopped and arrested. *See id.* ¶ 22.

In April 2012, Elmer Melesio entered into a plea of guilty to Aiding and Abetting Possession with Intent to Distribute and Distribution of Methamphetamine, a Schedule II Controlled Substance, a class A felony. *See* Judgment, Dkt. 68. Melesio received a 262-month sentence and now seeks compassionate release for reasons related to the COVID-19 pandemic. *See id.*; *see also* Mot. for Release.

## II.     LEGAL STANDARD

"The court may not modify a term of imprisonment once it has been imposed except that-
(1) in any case—

>   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>   (i) extraordinary and compelling reasons warrant such a reduction"

18 U.S.C.A. § 3582(c)(1)(A). "The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences." *United*

*States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30, 2020) (citing *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020)). "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105 (citing First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c)(1)(A) (2020)).

In considering a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A), a district court shall engage in a "three-step inquiry." *United States v. Elias*, No. 20-3654, 2021 WL 50169, at *1 (6th Cir. Jan. 6, 2021) (citing *Jones*, 980 F.3d at 1101). First, "the court must 'find' that 'extraordinary and compelling reasons warrant a sentence reduction.' " *Id.* (citing *Jones*, 980 F.3d at 1101). Second, the court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.' " *Id.* (citing *Jones*, 980 F.3d at 1101). Although the Sentencing Commission's policy statement on reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is recited at U.S.S.G. § 1B1.13, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018 . . . [and] the policy statement does not wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1109 (citing U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)).

Consequently, the Sixth Circuit in *Jones* decided that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," U.S. Sentencing Guideline § 1B1.13 is no longer an "applicable" policy statement in cases where an incarcerated person, as opposed to the Director of the Bureau of Prisons, files his or her own compassionate release motion in district court. *Jones*, 980 F.3d at 1109. Accordingly, district courts "may skip step two of the § 3582(c)(1)(A) inquiry" and have "full discretion . . . to determine whether an 'extraordinary

3

and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1109, 1111.  Thus, for now, district courts need not ensure that their ideas of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) are consistent with the Sentencing Commission's idea of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) as currently reflected at U.S.S.G. § 1B1.13.

Despite the Sixth Circuit's holding in *Jones*, this Court agrees with the United States District Court for the Eastern District of Kentucky in stating that "[w]hile the policy statement found in U.S.S.G. § 1B.13 of the Sentencing Guidelines is not binding, it provides a useful starting point to determine whether extraordinary and compelling reasons exist." *United States v. Muncy*, No. 6: 07-090-DCR, 2020 WL 7774903, at *1 (E.D. Ky. Dec. 30, 2020).  Congress provided no statutory definition of "extraordinary and compelling reasons" in section 3582(c)(1)(A).  *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020).  Instead, Congress directed the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Adkins*, No. 5:18-058-DCR, 2020 WL 7755629, at *1 (E.D. Ky. Dec. 29, 2020) (quoting 28 U.S.C. § 994(t)).  Those descriptions are found in § 1B1.13 of the United States Sentencing Guidelines (policy statement) and the application notes to that section.

This policy statement describes four categories of extraordinary and compelling reasons. The first three relate to an inmate's serious medical conditions, age, and status as a caregiver. U.S.S.G. § 1B1.13, cmt. n.1(A)–(C).  Specific medical conditions of a defendant constituting extraordinary and compelling reasons for a reduction in terms of imprisonment may include

4

"terminal illness," "a serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process." *Id.* The application note to U.S.S.G. § 1B1.13 further provides that the age of a defendant may be a necessary and compelling reason for a reduction in terms of imprisonment when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* The last category is a catch-all provision titled "Other Reasons," which reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, cmt. n.1(D).

After considering whether extraordinary and compelling reasons warrant a sentence reduction and whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, the district court proceeds to the third and final step of the analysis. If a sentence reduction is warranted under steps one and two, at step three, the court is to consider whether that reduction is defensible under the circumstances of the case by considering all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A); *Elias*, 2021 WL 50169, at *1 (citing *Jones*, 980 F.3d at 1101); *Jones*, 980 F.3d at 1108.

## III.   DISCUSSION

"[A]n imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105.

Melesio claims that he has exhausted his administrative remedies, *see* Mot. for Release at 3, and the Government agrees, *see* Resp. at 6. Accordingly, the Court finds that Melesio has properly exhausted his administrative remedies under the First Step Act.

Melesio states that extraordinary and compelling reasons exist because of "the current COVID-19 global pandemic," "the rapidly spreading variants of the COVID-19 virus," and "underlying medical conditions that greatly increase his risk of . . . death." Mot. for Release at 2. Specifically, Melesio states that he suffers from hypertension, diabetes, and has a BMI over 25, all of which he worries will cause serious illness should he be infected with COVID-19 or one of its variants. *See* Inmate Request, Dkt. 108-1; *see also* Mot. for Release at 4. Melesio is correct that these conditions are risk factors associated with serious COVID-19 symptoms.[1] "Even so, a 'generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release.' " *United States v. Dener*, No. 17-CR-20315, 2020 WL 5653303, at *3 (E.D. Mich. Sept. 23, 2020) (quoting *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020)). This is especially true when a person has access to and has received the COVID-19 vaccine. *See, e.g.*, *United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021); *United States v. Wymer*, No. 3:13-CR-00134-JGC-1, 2021 WL 5707188, at *2 (N.D. Ohio Dec. 1, 2021). Melesio received both doses of his covid vaccine. *See* Immunization Records, Dkt. 111-2.

Further, Melesio is currently housed at FCI Sheridan, a facility with 1,516 total inmates. *See FCI Sheridan*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/she/

---

[1] Having hypertension, having diabetes, or being overweight, can make a person more likely to get very sick from COVID-19. *COVID-19: People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 22, 2022).

(last visited June 30, 2022). According to the Bureau of Prisons, at this time there are only two active COVID-19 cases among inmates and eight active COVID-19 cases among staff. *See COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited June 30, 2022). This low number of reported cases is not the type of severe outbreak that would give rise to extraordinary and compelling reasons for compassionate release. *See, e.g.*, *United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021); *United States v. Haas*, No. 617CR00037-GFVT-HAI-1, 2021 WL 1546432, at *2 (E.D. Ky. Apr. 20, 2021).

In sum, neither Melesio's underlying conditions nor the number of cases at FCI Sheridan qualify as the type of extraordinary and compelling reason permitting compassionate release. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("[A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction.").

Lastly, even if Melesio had established an extraordinary and compelling reason for compassionate release, this Court would still deny his motion at this time. Granting compassionate release when Melesio has served approximately 60% of his sentence would not adequately reflect the seriousness of the offense under § 3553(a)(2)(A) given that Melesio is responsible for the trafficking of a minimum of 12.74 kilograms of methamphetamine (mixture) and 677.4 grams of methamphetamine (actual). *See* PSR ¶ 28; Resp. at 4, 12. Melesio provided numerous people with methamphetamine, so his sentence remains sufficient but not greater than necessary to serve the purposes of sentencing.

## IV. CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendant Elmer Melesio's Motion for Compassionate Release, Dkt. 108, is **DENIED**.

**IT IS SO ORDERED**

**Thomas B. Russell, Senior Judge**
**United States District Court**

June 30, 2022

cc: Elmer Melesio
13793-033
SHERIDAN
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 5000
SHERIDAN, OR 97378
PRO SE